Sam CULBERTSON, Individually and as Independent Executor of the Estate of Jerry Monroe Culbertson, Deceased, and Culbertson Enterprises, Inc., Appellants,

v.

Frederick BRODSKY, Appellee.

No. 2–89–080–CV.

Court of Appeals of Texas, Fort Worth.

Aug. 7, 1989.

Rehearing Denied Sept. 13, 1989.

**452**

Fielding, Barrett, Hunter & Taylor, and Tim G. Sralla, Fort Worth, for appellants.

Brice & Mankoff and Andrew F. Emerson, Dallas, for appellee.

Before WEAVER, C.J., and FARRIS and KELTNER, JJ.

## ORDER AND OPINION

FARRIS, Justice.

Appellants Culbertsons have filed a motion for review of the trial court's order setting the amount of supersedeas bond, complaining that it is excessive. *See* TEX. R.APP.P. 49(b). Culbertsons are appealing a judgment awarding appellee Brodsky, as grantee, specific performance of a real estate sales contract, $140,000 in attorney's fees, and costs. The trial court set Culbertsons' supersedeas bond at $588,400. The Culbertsons allege that they cannot post bond in the amount ordered by the court and if compelled to do so, will suffer irreparable injury. They request that we reduce the bond to $10,000 contending (1) the trial court erred in basing the amount of the bond in part upon an estimate of profit Brodsky might realize from a potential second sale of the property rather than the value of the rent or hire of the property during the appeal and (2) the amount of bond should not be equal to the attorney's fees and costs because they will suffer irreparable harm if required to post a bond in that amount while Brodsky will suffer no substantial harm if the Culbertsons are permitted to post a smaller bond. In response, Brodsky argues (1) the trial court appropriately set bond based upon potential lost profits from a second sale because the bond should be based upon the fair market value of the property rather than its potential rent or hire during the pendency of the appeal and (2) TEX.R.APP.P. 47 requires the amount of supersedeas bond with respect to attorney's fees, interest, and cost must be for the full amount of the judgment.

██ We sustain Culbertsons' motion because we find that they will be irreparably injured, and remand to the trial court for findings of fact with regard to the amount of supersedeas bond, holding that: (1) the proper amount of bond should not be based upon anticipated lost profit from a possible subsequent resale and (2) the amount of supersedeas bond should be offset against Brodsky's obligation to pay Culbertsons under the real estate sales contract.

In support of their motion, Culbertsons have filed a partial record including a statement of facts of the hearing on the motion to set supersedeas bond and the trial court's judgment which incorporates as an exhibit the real estate contract of sale. The land is a 197-acre tract and the Culbertsons/Brodsky contract provided that Brodsky would pay Culbertsons $9,000 an acre by paying 15% of the total purchase price payable in cash at closing, and by executing a promissory note bearing interest at 9-½% per annum and payable in ten successive annual installments beginning with the 11th anniversary of the date of the note. Both Sam Culbertson and Brodsky testified that the land in question was worth $20,000 an acre. Brodsky's interest in the property is protected by *lis pendens*.

At the hearing on the motion to set the amount of the supersedeas bond, the trial court received testimony that Mr. Culbertson could raise the funds needed to post a $588,400 bond only by liquidating his assets at a fraction of their value. An elderly retired individual, Mr. Culbertson has two to three thousand dollars in cash and lives on a fixed income of $20,000, composed of social security benefits, income from rental property, and notes receivable. If he liquidated the notes, he would sustain a loss of 25% to 50% due to the discounting that would be necessary to sell the notes. The real estate would have to be discounted up to 50% and would take at least three to five months to be sold.

Upon completion of testimony on the motion to set bond, the trial court determined that the property had a value of $3,940,000 giving Brodsky a profit of $2,167,000 and set bond at 20% of lost profit ($433,400) plus attorney's fees awarded by the court ($140,000), 10% interest on attorney's fees

($14,000) and estimated costs of $1,000 for a total of $588,400.

The first question we must address is what bond is necessary to supersede a judgment ordering a grantor to specifically perform under a contract for the sale of real estate. Culbertsons argue that TEX. R.APP.P. 47(c) and (d) mandate that the bond should be the value of the rents or hire of the property during the appeal:

(c) When the judgment is for the recovery of land or other property, then the bond, deposit, or orders which adequately protect the judgment creditor for any loss or damage occasioned by the appeal shall be further conditioned that the judgment debtor shall, in case the judgment is affirmed, pay to the judgment creditor the value of the rent or hire of such property during the appeal, and the bond, deposit, or alternate security shall be in the amount estimated or fixed by the trial court.

(d) When the judgment is for the recovery of or foreclosure upon real estate, the judgment debtor may suspend the enforcement of the judgment insofar as it decrees the recovery of or foreclosure against said specific real estate by posting security in the amount and type to be ordered by the trial court, not less than the rents and hire of said real estate; but if the amount of the security is less than the amount of any money judgment, with interest and costs, then the judgment creditor can execute against any other property of the judgment debtor unless the trial court within its discretion orders a suspension of enforcement of the money judgment with or without the posting of additional security.

*Id.*

Brodsky contends that a decree of specific performance of a real estate contract does not constitute a judgment for recovery of land. He contends that TEX.R. APP.P. 47(f) requires a bond securing him against any loss occasioned by the appeal including the loss of potential future profits:

(f) When the judgment is for other than money or property or foreclosure, the security shall be in such amount and type to be ordered by the trial court as will secure the judgment creditor for any loss or damage occasioned by the appeal. The trial court may decline to permit the judgment to be suspended on filing by the judgment creditor of security to be ordered by the trial court in such an amount as will secure the judgment debtor in any loss or damage caused by any relief granted if it is determined on final disposition that such relief was improper.

*Id.*

Sections (c), (d), and (f) of Rule 47 are respectively the successors to sections (b), (c), and (e) of TEX.R.CIV.P. 364, as originally adopted in 1940. Despite the fact that these subparts of the rule have remained substantially unchanged for nearly fifty years, there is a dearth of authority interpreting or applying them. There is, for instance, no explanation of the difference between a Rule 47(c) judgment for the recovery of land and a Rule 47(d) judgment for the recovery of real estate. Similarly, no opinion or secondary authority that we can discover explains why Rule 47(c) states that a bond shall be conditioned, that the judgment debtor shall pay the judgment creditor *the value of the rent or hire of such property* during the appeal while Rule 47(d) requires that the bond shall be *not less than the rents and hire of said real estate.* Neither 47(c) nor (d), however, precludes the trial court from setting the amount of security necessary to suspend execution of judgment at an amount which is greater than the compensation for the use and occupancy of the land.

No authority discusses what amount of supersedeas bond, if any, is necessary to protect a plaintiff who has won the unique recovery of specific performance which requires plaintiff to pay consideration for the contract right he has recovered. Amendments substantially rewriting Rule 47, effective January 1, 1988, reflect an intent to deal with a problem made notorious by the *Texaco* case, the financial impracticability of appeal because of the onerous cost of superseding judgment. *See Texaco Inc. v. Pennzoil Co.,* 784 F.2d 1133, 1154 (2nd

Cir.), *rev'd,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). However, the amendments did nothing to remove the ambiguities of Rule 47 and we must plow fallow ground.

As noted, Culbertsons argue that paragraphs (c) and (d) are applicable to the facts of this case. It has previously been held that a suit for specific performance of a contract to sell land is not one for the recovery of land. *See Bachman v. Neal,* 180 S.W.2d 643, 644 (Tex.Civ.App.—Fort Worth 1944, writ dism'd). *Bachman* dealt with former TEX.R.CIV.P. 364(b) and (c) which were substantially identical to 47(c) and (d), and contained the emphasized language quoted above. *Bachman* suggests that 47(c) and (d) are inapplicable, citing cases for the proposition that a suit for specific performance of a contract to sell land is not a suit for the recovery of land. These cases, however, were plea of privilege cases rather than cases dealing with the setting of supersedeas bonds. Regardless of whether the original drafters of Rule 364 intended either (b) or (c) to cover a case with facts like the present case, we can discern no logical reason why the relief granted Brodsky entitles him to any greater security than a judgment creditor in a suit for recovery of land.

■ Brodsky has argued that because a decree of specific performance of a real estate contract does not constitute a judgment for recovery of land, Rule 47(f) is applicable and entitles him to security for lost profits. Rule 47(f), however, is applicable to judgments *for other than money or property.* Even if 47(f) were applicable, we find that it is not the intent of any part of Rule 47 to provide security for speculative damages such as the potential lost profits claimed by Brodsky.

Both parties testified that the 197 acres had a value of $20,000 per acre; $11,000 per acre more than the purchase price stated in the contract. However, the anticipated future lost profits are based upon a potential of a loss of a future sale by Brodsky. To allow Brodsky to be secured against any loss or damage occasioned by the appeal to this extent and to potentially

bring an action against a surety on such a supersedeas bond would be to protect a limited class of judgment creditors to an extent far greater than that afforded other judgment creditors.

By way of analogy, in the case of a money judgment, the judgment creditor might be able to show the court that he had an opportunity to invest the sum recovered, if timely paid, in an investment offering a return greater than the legal rate of interest on judgments; nevertheless, the judgment debtor would ordinarily only be required to secure the judgment creditor to the extent of principal and legal interest.

■ The ambiguity of Rule 47 is such that we cannot determine which section of the rule is applicable. Regardless of whether section (c), (d) or (f) applies, the answer is the same. Under Rule 47, loss or damage to a judgment creditor does not include possible lost profits that may be suffered in the future and we can see no reason why Brodsky should be entitled to more protection than a money or a land judgment creditor. Accordingly, we find that the trial court has abused its discretion in employing the lost profits measure.

While rejecting Brodsky's argument that the judgment for specific performance should be superseded to an extent different than that of a judgment for recovery of land, we take note of a factor which should bear upon the determination of the amount of bond necessary to secure the judgment creditor awarded specific performance of a contract for sale of land, the requirement of mutuality. In order to exercise his right to purchase the 197 acres, Brodsky must pay the Culbertsons, according to the terms of the contract, $265,950 at closing and execute a promissory note for the balance of the purchase price. Brodsky's judgment for the realty in question is secured by *lis pendens.* His right to additional damages is secured, at least in part, by the potential offset which his unpaid consideration for the sale represents.

The second issue before us is what amount of supersedeas bond is required, in this case, to secure Brodsky's judgment for attorney's fees. The judgment awarded

Brodsky $100,000 in attorney's fees for services rendered in the preparation and trial of the case and a total of $40,000 as additional attorney's fees contingent upon the case reaching various stages of appeal. Rule 47(b) allows the trial court to supersede money judgments and provides generally that the amount of security should be at least the amount of the judgment interest and costs. Deviation is permitted, however, if the court finds that requiring security in the amount of the judgment interest and costs will cause irreparable harm to the judgment debtor and not posting such a bond or deposit will cause no substantial harm to the judgment creditor. In this case the purchase price required of Brodsky as a part of the specific performance remedy, by its nature, may preclude the need for any or at least a part of the bond ordered by the trial court.

■ It is in the province of this court to review the action of the trial court in setting supersedeas bond and order bond in a lesser amount if we find that the trial court's order is excessive and unreasonable. *See Joy v. Joy*, 153 S.W.2d 180, 183 (Tex.Civ.App.—Dallas 1941, writ dism'd). In requiring a change in the trial court's order, we may remand to the trial court for findings of fact or taking of evidence. TEX.R.APP.P. 49(b).

We find that the trial court set an excessive bond requirement because it based the bond in part on an inappropriate measure, potential lost profits, and did not consider the payment Brodsky must make to the Culbertsons if he prevails on appeal. We further find that the Culbertsons will suffer irreparable harm if required to post bond in the amount set by the trial court whereas a substantial reduction in bond will not cause substantial harm to Brodsky.

The order of the trial court with regard to the amount of supersedeas bond required of the Culbertsons is set aside. This case is remanded to the trial court with instructions that the trial court shall conduct a hearing and consider evidence relating to the sufficiency of the supersedeas bond, including the present value of the consideration required of Brodsky by the contract and the value of the rent and/or hire of the property and return to this court its findings of fact in that regard.